USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/24/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
     :
KIA SONG TANG,     :
     :
                          Plaintiff,     :         14-CV-1108 (JMF)
     :
                -v-     :         OPINION AND ORDER
     :
GLOCAP SEARCH LLC, et al.,     :
     :
                     Defendants.     :
     :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Kia Song Tang ("Plaintiff" or "Song") brings this action against Defendants Glocap Search LLC ("Glocap") and Adam Zoia pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and New York law, alleging gender discrimination and retaliation. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing principally that Plaintiff cannot establish an inference of discrimination and that Glocap's adverse employment actions against her predated any protected activity. For the following reasons, Defendants' motion is largely DENIED.

## BACKGROUND

      The following facts — taken from the admissible materials submitted by the parties — are viewed in the light most favorable to Plaintiff, the nonmoving party. *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).[1]

---

[1] Under Rule 36 of the Federal Rules of Civil Procedure, a matter is deemed admitted unless, within thirty days of being served with a request to admit, a party responds to the request with a written answer or objection. *See* Fed. R. Civ. P. 36(a)(3). Rule 36 also provides that "[a] matter admitted under [Rule 36(a)] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Plaintiff claims that

The relevant timeline is largely undisputed. Glocap is a "search firm" and "temporary staffing agency"; Zoia is Glocap's owner and Chief Executive Officer. (Defs.' Statement Undisputed Material Facts Pursuant Local Civil Rule 56.1 (Docket No. 60) ("Defs.' Rule 56.1 Statement") ¶¶ 3-4). In March 2008, Zoia hired Plaintiff to work at Glocap and, in July 2010, promoted her to be the company's Chief Operating Officer ("COO"). (*Id.* ¶¶ 8, 18). In the fall of 2012, Plaintiff moved from New York, where Glocap had its largest office, to Dallas, Texas, where Glocap had no office. (Decl. Eric R. Stern (Docket No. 59) ("Stern Decl."), Ex. B ("Song Dep.") 88-89; Defs.' Rule 56.1 Statement ¶ 46). She continued to serve as Glocap's COO, however, working largely from Texas and travelling to New York only periodically. (Defs.' Rule 56.1 Statement ¶ 46; *see* Glunt Decl., Ex. 3). On July 9, 2013, when Plaintiff was in New York, Zoia learned that Plaintiff was pregnant. (Defs' Rule 56.1 Statement ¶¶ 137). Less than two months later, he fired her. (*Id.* ¶ 195).

Although the parties agree on the general sequence of events, they disagree about almost all of the other relevant facts — including, unsurprisingly, why Zoia fired Plaintiff. Defendants contend that, as a condition of her move to Texas, Plaintiff agreed to perform due diligence on, and create a mini-business plan for, opening a Glocap office in Texas by the beginning of 2013. (*Id.* ¶¶ 31, 37). Plaintiff counters that "[t]here was never a set plan to open a Dallas office," let

---

Defendants never responded to her requests to admit (Decl. Robert Glunt (Docket No. 70) ("Glunt Decl.") ¶ 4; *id.*, Ex. 44 ("RTA")), and Defendants do not claim, let alone prove, otherwise (*see* Defs.' Mem. Law Supp. Mot. Summary J. (Docket No. 62) ("Defs.' Mem.") 8 n.1 (attempting to convince the Court that an admitted fact is "irrelevant," without denying that Rule 36(a)(3) applies); Defs.' Reply Mem. Law Supp. Their Mot. Summary J. (Docket No. 77) ("Defs.' Reply") 5 n.12 (similar)). Nor have Defendants filed a motion for relief pursuant to Rule 36(b). The facts covered by Plaintiff's requests to admit "are therefore 'conclusively established' for purposes of this action unless and until a motion is granted permitting withdrawal." *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 (RRM) (VVP), 2009 WL 205048, at *4 (E.D.N.Y. Jan. 27, 2009) (quoting Fed. R. Civ. P. 36(b)).

alone a specific timeline. (Pl.'s Counterstatement Defs.' Statement Undisputed Material Facts Pursuant Local Civil Rule 56.1 (Docket No. 69) ("Pl.'s Counterstatement") ¶¶ 31, 36-38). Instead, she maintains that there was only a "plan . . . to investigate the *possibility* of opening a Dallas office." (*Id.* ¶ 38 (emphasis added)). Regardless, Glocap never opened a Texas office, and Defendants claim that it became increasingly apparent that Plaintiff could not operate effectively as a remote COO. In particular, Defendants point to an incident on June 28, 2013, which they term "the crisis," in which eleven New York Glocap employees resigned without notice to start their own business with a competitor. (Defs.' Rule 56.1 Statement ¶¶ 65, 69). According to Defendants, this mass resignation presented an existential threat to the company. (*Id.* ¶¶ 70, 72). Because Plaintiff did not arrive in New York until July 8, 2013, Defendants maintain that others — including Laura Vincent, who ultimately became Glocap's head of operations — were largely responsible for steering the company through the crisis. (*Id.* ¶¶ 81, 92-102; RTA ¶ 46). Given the company's difficulties, "Zoia concluded that it was a bad idea to have a COO in Texas, especially an expensive COO" (Defs.' Rule 56.1 Statement ¶ 120, 169), and asked Plaintiff in early July to move to the revenue side of the business, where she would be compensated by earning commissions rather than receiving a salary (*Id.* ¶¶ 114-15, 151-62). After Plaintiff refused, Defendants fired her. (*Id.* ¶¶ 122, 195)

      Plaintiff, of course, tells a different story. Plaintiff claims that she was actively involved in the management of the company despite being based in Texas. She asserts that she played a large role in responding to the June 28th departures, and that, in any event, the supposed "crisis" did not have a significant impact on the company. (*See, e.g.*, Pl.'s Counterstatement ¶¶ 67, 71, 76, 86, 101-102, 163). According to Plaintiff's version of events, Glocap's alleged need to cut costs and the difficulty posed by having a remote COO were merely excuses for firing her;

Defendants really fired her because they did not want to give her the three months of paid maternity leave that she had accrued as a salaried employee. (Pl.'s Counterstatement ¶¶ 126, 128, 131, 169). If Plaintiff had acceded to Zoia's request to become a commissioned employee, she asserts, she would no longer have been entitled to that leave. (*Id.* ¶ 128). It was only after Plaintiff refused to accept a position without paid leave that Defendants began excluding her from Glocap's day-to-day management. (RTA ¶¶ 39, 41-50). Hoping to reverse that change, Plaintiff sent Zoia an e-mail on August 20, 2013, stating that she wished to make a "formal complaint" that she was "treat[ed] . . . differently" after she had notified Zoia of her pregnancy and refused to "immediately switch to the sales side." (Stern Decl., Ex. K (the "August 20, 2013 e-mail")). Plaintiff argues that this e-mail, in addition to her pregnancy, was the real impetus behind Zoia's decision to fire her. (Pl.'s Counterstatement ¶¶ 169, 187-89, 192).

## DISCUSSION

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

### A. Pregnancy Discrimination

Defendants move first to dismiss Plaintiff's gender discrimination claims under Title VII, the New York State Human Rights Law, N.Y. Exec. L. § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code § 8-107 ("NYCHRL").  The Court evaluates all of those claims under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (Title VII); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n. 1 (2d Cir. 1999) (NYSHRL); *Siddiqi v. N.Y. City Health & Hospitals Corp.*, 572 F. Supp. 2d 353, 365 (S.D.N.Y. 2008) (NYCHRL and NYSHRL).  To be sure, "[i]t is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).  Typically, however, courts in the Second Circuit apply the "liberal standards [of the NYCHRL] to the basic *McDonnell Douglas* framework."  *Farzan v. Wells Fargo Bank, N.A.,* No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases); *see also DeMarco v. Coopervision, Inc.*, 369 F. App'x 254, 255 (2d Cir. 2010) (summary order).

Under that framework, a plaintiff must first make out a *prima facie* case of discrimination.  *See McDonnell Douglas,* 411 U.S. at 802.  A Plaintiff's burden of establishing a *prima facie* case of pregnancy discrimination is "*de minimis*."  *Kerzer v. Kingly Mfg.*, 156 F.3d

396, 401 (2d Cir. 1998). She need show only that "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." *Id.* (internal quotation marks omitted); *accord Pollock v. PNC Fin. Servs. Grp., Inc.*, No. 13-CV-283 (VB), 2014 WL 2212069, at *3 (S.D.N.Y. May 19, 2014). If the plaintiff meets her initial burden, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, then the burden then shifts back to the plaintiff to show "pretext." *Id.* at 804-05. To defeat summary judgment, "'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). More specifically, the plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely than not discrimination was the real reason" for the challenged actions. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks omitted) (emphasis added).

Here, as Plaintiff herself concedes (Pl.'s Mem. Law Opp'n Defs.' Mot. Summary J. (Docket No. 67) ("Pl.'s Mem.") 29), the Title VII claims against Zoia must be dismissed, as there is no individual liability under Title VII. *See, e.g.*, *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). Plaintiff's Title VII discrimination claims against Glocap and her discrimination claims under the NYSHRL and NYCHRL against both Defendants, however, are more than sufficient to survive summary judgment. First, Defendants contend that Plaintiff has

not established a *prima facie* case of pregnancy discrimination because she has not shown that "her position remained open and was ultimately filled by a non-pregnant employee." (Defs.' Mem. 5 (quoting *Kerzer*, 156 F.3d at 401)). But, although Glocap did not hire anyone to replace Plaintiff, there is no dispute that Plaintiff's responsibilities were assumed by Zoia and Vincent, neither of whom was pregnant at the time. (Defs.' Rule 56.1 Statement ¶¶ 195-97, 200-02). That alone is sufficient. *See, e.g.*, *Hanna v. InfoTech Contract Servs., Inc.*, No. 01-CV-680. 2003 WL 2002773, at *6 (D. Conn. Apr. 21, 2003) ("Although InfoTech did not hire someone to replace Hanna, at least one employee who was not in Hanna's protected class did assume many of his responsibilities."). And, in any event, Plaintiff need not prove that she was replaced by a non-pregnant employee to establish a *prima facie* case of pregnancy discrimination; she may "[a]lternatively . . . establish . . . a *prima facie* case by demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Kerzer*, 156 F.3d at 401. Plaintiff can easily meet that standard here.

Specifically, Plaintiff points to evidence that Defendants began to treat her differently after learning that she was pregnant, and Defendants fired her just two months later. (RTA ¶¶ 41-50, 54). *See, e.g.*, *Pollack*, 2014 WL 2212069, at *4-5 (finding an inference of discrimination when the plaintiff was fired four months after the announcement of her pregnancy and when the defendant began criticizing her after learning she was pregnant). Defendants argue that a reasonable factfinder could not infer that Defendants unlawfully discriminated against Plaintiff because Zoia, who fired Plaintiff, was the person who initially hired and promoted her. (Defs.' Mem. 10-11 (citing *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)). But Plaintiff was not pregnant when she was hired or promoted, so the "same actor doctrine" would not prevent a reasonable trier of fact from inferring that discrimination occurred. Nor is

7

the Court convinced by Defendants' contentions that (1) Plaintiff would have been entitled to her already-accrued maternity leave even if she had transitioned to the revenue side of the business and (2) Glocap is "inundated with female supervisors and employees," dozens of whom have taken maternity leave. (Defs.' Mem. 5-11). With respect to the former point, there is no dispute that Glocap employees compensated through commissions were generally not entitled to paid maternity leave. (*See* RTA ¶¶ 37-38). Pointing to Glocap's general maternity leave policy, Defendants claim that Plaintiff would not have had to forfeit the maternity leave that she had already earned, even if she transitioned to a commission-based salary structure. But Glocap's policy states only how maternity leave is accrued; it is silent on the question of what happens to an employee's paid leave should she transition to a position that would not entitle her to such leave. (Stern Decl., Ex. L at 51). Defendants also point to Zoia's affidavit, which claims that "since Ms. Song had earned and accrued her maternity leave as a salaried employee . . . she would not have forfeited this accrued leave had she become a recruiter." (Aff. of Adam Zoia (Docket No. 61) ¶ 6). It is well established, however, that "a genuine issue of fact . . . is not disposed of simply by the submission of a self-serving affidavit." *E-Smart Technologies, Inc. v. Corse*, No. 03-CV-7060 (RO), 2004 WL 2093531, at *3 (S.D.N.Y. Sept. 17, 2004). As for Defendants' second argument, although Glocap may have had significant numbers of female employees, Plaintiff submits evidence that no salaried employee took paid maternity leave between April 2008 and April 2011, and that, as of June 1, 2013, married women (arguably the population that is most likely to become pregnant) receiving a salary — as opposed to commissions — constituted only ten percent of the company's workforce. (RTA ¶¶ 10, 15).

      Finally, Defendants argue that they had a non-discriminatory reason for firing Plaintiff — namely, that they needed to cut costs and that Plaintiff was no longer an effective COO after her

8

move to Texas. (Defs.' Mem. 11-19). The evidence in the record, however, is more than sufficient for a reasonable jury to conclude that Defendants' stated reasons were pretextual. For example, as Plaintiff correctly points out in her memorandum of law, courts have recognized that "[a] lack of written warning, disciplinary action or reprimand is evidence that may rebut a defendant's asserted legitimate, non-discriminatory rationale," *see Smith v. K & F. Indus., Inc.*, 190 F. Supp. 2d 643, 651 (S.D.N.Y. 2002), and Plaintiff received a positive performance review only weeks before she was asked to change positions and *never* received a negative performance review as COO. (RTA ¶¶ 20-21, 29-32; Pl.'s Mem. 19). In addition, Plaintiff introduces evidence that (1) her responsibilities changed after Zoia learned that she was pregnant on July 9, 2013 (RTA ¶¶ 41-59); (2) another employee was fired when on maternity leave and complained at the time that she was fired due to her pregnancy (although she now denies it (Stern Decl., Ex. C at 85-86)) (RTA ¶¶ 11-12); (3) few of Glocap's employees have taken paid maternity leave (RTA ¶ 15); and (4) Defendants decided to fire Plaintiff only after learning that she was pregnant (RTA ¶ 35). Whether or not Plaintiff's proof of pretext is sufficient to prevail at trial, it is certainly enough to survive summary judgment. *See, e.g.*, *Habe v. 33 Bayville Ave. Rest. Corp.*, No. 09-CV-1071 (JS) (ETB), 2012 WL 113501, at *4 (E.D.N.Y. Jan. 13, 2012) (holding that the plaintiff's claims survived summary judgment when she was fired shortly after revealing she was pregnant and in spite of a recent favorable performance review); *Woodell v. United Way of Duchess Cnty.*, 357 F. Supp. 2d 761, 772 (S.D.N.Y. 2005) (finding pretext where, among other factors, the defendant changed his attitude towards the plaintiff after learning she was pregnant, the plaintiff was fired shortly after announcing her pregnancy, and the plaintiff had "received compliments about her work").

**B.     Retaliation**

Next, Plaintiff alleges that she was fired in retaliation for her August 20, 2013 e-mail lodging a "formal complaint" that she was being treated differently because of her pregnancy, in violation of both Title VII and New York law. To establish a *prima facie* case of retaliation under Title VII, "an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). "Protected activity" normally takes the form of filing a formal complaint, but the Second Circuit has held that informal complaints to management may also qualify as "protected activity." *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) (finding informal complaints to be "protected activity" under Title VII); *see also Risco v. McHugh*, 868 F. Supp. 2d 75, 109-10 (S.D.N.Y. 2012) (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). To prove a causal connection between the protected activity and an adverse action under Title VII, the plaintiff must show "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Under the NYCHRL, a plaintiff may prevail on a retaliation claim if she can prove that "she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). Further, the employer is liable "if [he] was motivated *at least in part* by an impermissible motive." *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (App. Div. 2d Dep't 2013) (emphasis added); *accord Mihalik*, 715 F.3d at 110.

Here, Plaintiff argues that the Court may infer retaliation from the fact that she was fired via telephone within hours of sending the August 20, 2013 e-mail. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 127-28 (2d Cir. 2013). (Pl.'s Mem. 24; RTA ¶ 54). Although Defendants acknowledge the close temporal connection between the August 20, 2013 e-mail and Plaintiff's termination, they claim they are entitled to summary judgment because (1) Zoia did not view the August 20, 2013 e-mail as a discrimination complaint (Defs.' Mem. 20); and (2) Glocap began taking adverse action against Plaintiff before she told anyone about her pregnancy and before she sent the August 20, 2013 e-mail (Defs.' Mem. 20-23). Defendants' first argument is frivolous — Plaintiff explicitly stated in her e-mail that she was making a "formal complaint," which is more than sufficient to raise a question of fact as to whether Zoia knew that she had engaged in protected activity. And, although "it is true that where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise," *Colon v. Fashion Institute of Technology*, 983 F. Supp. 2d 277, 287 (S.D.N.Y. 2013) (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)), there is a genuine dispute of fact about whether that is the case here. At least for the purposes of this motion, for example, Plaintiff has conclusively established that Zoia did not take any adverse action against her prior to learning about her pregnancy in early July. (RTA ¶¶ 35, 41-50). Further, Plaintiff states in her affidavit that Zoia told her "something to the effect" that the August 20, 2013 e-mail raised a "red flag" for him. (Song Dep. 189). It would therefore not be unreasonable for a trier of fact to conclude that Zoia began decreasing Plaintiff's job responsibilities due to her pregnancy, and ultimately fired her due to her "formal complaint" in the August 20, 2013 e-mail.

### C.  Punitive Damages

Finally, Defendants move for summary judgment with respect to Plaintiff's claims for punitive damages under Title VII and the NYCHRL.[2]  In their initial memorandum of law, Defendants cite cases stating that an employer must have "knowledge that it may be acting in violation of federal law" for a plaintiff to receive punitive damages, and claim that they are entitled to summary judgment because "the plaintiff has introduced no evidence which could satisfy the required showing of 'malice.'" (Defs.' Mem. 24 (quoting *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535 (1999)).  In their reply memorandum of law, however, Defendants concede that they do not "claim to be *unaware* of the federal prohibition of discriminating or retaliating against an individual under Title VII." (Defs.' Reply 10; *see also* Pl.'s Mem. 28-29 (noting, among other things, that Defendants admit that Glocap had an anti-discrimination policy that prohibited discrimination based on pregnancy, that Zoia was previously accused of discrimination, and that Zoia graduated *magna cum laude* from Harvard Law School)).  Because Defendants indisputably knew that discriminating against women on the basis of pregnancy was illegal, and Plaintiff has raised a genuine disputes of material fact with regard to whether Defendants did so discriminate, there is no basis to grant Defendants summary judgment on Plaintiff's request for punitive damages.

### D.  Sealing

By letter dated December 10, 2014, Plaintiff requested permission to file three exhibits under seal.  (Docket No. 75).  Notably, Plaintiff acknowledged that she "does not believe" any of

---

[2]  Plaintiff does not seek punitive damages under the NYSHRL.  (*See* Pl.'s Mem. 27 n.14; *see also* Compl. ¶¶ 72, 86).  That is for good reason.  *See, e.g.*, *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 262 (S.D.N.Y. 1999) (noting that punitive damages are unavailable under the NYSHRL).

12

the documents "merits sealing protection." (*Id.* at 1). Instead, she justified the need for sealing only by stating that she "agreed to treat [them] as confidential and seek to have [them] filed under seal in signing the July 11, 2014 Protective Order." (*Id.*). The mere fact that information is subject to a confidentiality agreement between litigants, however, is not a valid basis to overcome the presumption in favor of public access to judicial documents. *See, e.g.*, *Dandong v. Pinnacle Performance Ltd.*, 10-CV-8086 (JMF), 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) ("The consent of the parties is not a valid basis to justify sealing, as the rights involved are the rights of the public." (internal quotation marks omitted)); *Vasquez v. City of N.Y.*, No. 10-CV-6277 (LBS), 2012 WL 4377774, at *3 (S.D.N.Y. Sept. 24, 2012) (similar). *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of public access). Accordingly, if Defendants wish for any of the three exhibits to remain under seal, they shall file an appropriate application, not to exceed five pages, no later than **April 7, 2015**, explaining the basis for doing so. If Defendants do not file such an application, Plaintiff shall file unredacted versions of the exhibits by **April 8, 2015**.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED with regard to Plaintiff's Title VII claims against Zoia, and DENIED with regard to all other claims. Plaintiff's request to file three exhibits under seal is temporarily granted. Should Defendants wish for any of the three exhibits to remain under seal, they shall file an appropriate application, not to exceed five pages, by **April 7, 2015**.

Per the Case Management Plan and Scheduling Order, **within thirty days** of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Rule 26(a)(3) of the Federal

Rules of Civil Procedure. The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices. Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Rule 51(a)(2)(A) of the Federal Rules of Civil Procedure. If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices. Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

Finally, if the parties are interested in a settlement conference before Magistrate Judge Fox, they shall so advise the Court by joint letter as soon as possible.

The Clerk of Court is directed to terminate Docket No. 58.

SO ORDERED.

Date: March 24, 2015
      New York, New York

_____
JESSE M. FURMAN
United States District Judge