UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                    :
KIA SONG TANG,                                                      :
                                                                    :
                              Plaintiff,                            :
                                                                    :
              -v-                                                   :
                                                                    :
GLOCAP SEARCH LLC., et al.,                                         :
                                                                    :
                              Defendants.                           :
                                                                    :
-------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED:  09/16/2015              │
└─────────────────────────────────────┘
```

14-CV-1108 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

      In this employment discrimination case, familiarity with which is assumed, Plaintiff Kia Song Tang alleges that her former employer, Glocap Search LLC ("Glocap"), and its principal, Adam Zoia ("Zoia," together with Glocap, "Defendants"), discriminated against her when she became pregnant and then fired her when she complained about that discrimination.[1]  She brings discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as New York City and State anti-discrimination law.  On June 29, 2015, after five days of trial, a jury rendered a verdict in Defendants' favor on all claims. (Docket No. 121).  Plaintiff now moves for judgment as a matter of law on her city-law retaliation claim or, in the alternative, a new trial on all of her retaliation claims.  (Docket No. 132).  For the reasons explained below, Plaintiff's motion is denied.

      Rule 50 of the Federal Rules of Civil Procedure "imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an

---

[1]     For a more detailed discussion of the relevant background, see *Kia Song Tang v. Glocap Search LLC*, No. 14-CV-1108 (JMF), 2015 WL 1344788 (S.D.N.Y. Mar. 24, 2015).

issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)); *accord Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127-28 (2d Cir. 2012).  According to the Second Circuit, the "burden is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Cash*, 654 F.3d at 333 (internal quotation marks omitted).  In such circumstances, a court may set aside the verdict only if, viewing the evidence in the light most favorable to the non-movant, "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007) (stating that a Rule 50 motion may be granted only if the court concludes that "a reasonable juror would have been compelled to accept the view of the moving party" (internal quotation mark omitted)).

The standard for granting a new trial under Rule 59 is less stringent, but still relatively high.  *See, e.g.*, *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003).  Specifically, a court may grant a motion for a new trial where the verdict is against the weight of the evidence, and need not view the evidence in the light most favorable to the nonmoving party; instead, the court may weigh the evidence — including the credibility of witnesses — independently.  *See id.* Nevertheless, a "decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-18 (2d Cir. 2012).  And while a judge evaluating a motion for a new trial may weigh witness credibility, he or she must do so "with caution and great restraint, as a judge

should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Id.* at 418 (internal quotation marks and citation omitted).  In fact, the Court of Appeals has cautioned that "where . . . a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* at 418-19; *accord ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992).  As the Court has explained, if a finding "turned to a large extent on the credibility of the witnesses who testified before the jury, the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing." *ING Glob.*, 757 F.3d at 99.

Applying those standards here, the Court is compelled to deny Plaintiff's motion in its entirety.  The Court begins with Plaintiff's argument that she is entitled to judgment as a matter of law on her city-law retaliation claim, which was brought pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.* ("NYCHRL").  To prevail on her retaliation claim under the NYCHRL, Plaintiff was required to show, among other things, that she "engaged in a protected activity." *Ardigo v. J. Christopher Capital, LLC*, No. 12-CV-3627 (JMF), 2013 WL 1195117, at *5 (S.D.N.Y. Mar. 25, 2013) (quoting *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009)).  There is no dispute that an employee's complaint about pregnancy discrimination — whether formal or informal — can constitute protected activity. *See, e.g., Dillon v. Ned Mgmt., Inc.*, No. 13-CV-2622 (JBW), — F. Supp. 3d —, 2015 WL 427921, at *13 (E.D.N.Y. Feb. 2, 2015).  For a complaint to qualify, however, the employee must also show that she had "a good faith, reasonable belief that the underlying

challenged actions of the employer violated the law." *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012). As Plaintiff concedes, that showing involves "two components": first, that the plaintiff had "'*subjective* good faith belief'" that her employer had violated the law and, second, that the complaint was "'*objective*[*ly*] reasonable[].'" (Reply Mem. Law Supp. Pl.'s Renewed Mot. J. Matter Law Or Alternative, New Trial (Docket No. 141) ("Pl.'s Reply") 6 (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 16-17 (2d Cir. 2013) (emphasis added)). Thus, if a plaintiff complained, not in good faith, but rather to protect her job or extort money from her employer, the activity is not protected under the statute. *See, e.g.*, *Sanders v. Madison Square Garden, L.P.*, 525 F. Supp .2d 364, 366 (S.D.N.Y. 2007); *see also, e.g.*, *Wolf v. Time Warner, Inc*., No. 09-CV-6549 (RJS), 2011 WL 856264, at *8 (S.D.N.Y. Mar. 3, 2011) ("[A] retaliation claim is not a 'tactical coercive weapon that may be turned against the employer as a means for the asserted victims to advance their own retaliatory motives and strategies.'" (quoting *Spadola v. N.Y.C. Transit Auth.* 242 F. Supp. 2d 284, 292 (S.D.N.Y. 2003)).

Here, there is no question that Plaintiff complained to Zoia that she was subject to pregnancy discrimination. (Defs.' Ex. Y). Nor, in the Court's view, is there any reasonable question that her complaint was *objectively* reasonable, as Defendants admitted (by failing to respond to Plaintiff's Requests for Admissions) that in the weeks after Plaintiff revealed her pregnancy to Zoia, he excluded her from certain discussions and decisions, reassigned some of her responsibilities to others, and asked her to transition to a compensation structure that would not include maternity leave. (Pl.'s Ex. 289). But one of Defendants' principal arguments at trial was that Plaintiff's complaint was made in bad faith: that she knew her job was on the line after her allegedly tepid response to a "crisis" at the company — a crisis that highlighted the problems

4

of having a highly paid chief operating officer working from a different city — and that, days later, she told Zoia she was pregnant (despite not yet showing) and ultimately complained in a cynical effort to either keep her job or (in Zoia's words) "position[]" herself to file a lawsuit. (*See, e.g.*, Tr. 81, 551-52, 969, 982-91).  And, viewed in the light most favorable to Defendants, the evidence was plainly sufficient for the jury to accept that argument.

For one thing, the jury was entitled to believe Zoia's testimony that he was "very happy for [Plaintiff]" when he heard that she was pregnant and enthusiastically congratulated her.  (Tr. 516-17).  For another, the jury could infer that Plaintiff did not actually believe that Zoia's initial treatment of her was discriminatory from the fact that she continued to stay at his home while she was in New York, even after he purportedly reacted negatively to news of her pregnancy and asked her to take a pay cut for what she now alleges to be discriminatory reasons.  (Tr. 274-75). Most compelling, however, there was evidence that three weeks after Zoia began treating Plaintiff differently (not, Defendants assert, because she was pregnant, but because she was absent in a time of crisis), she cynically generated a paper trail to support a later claim of discrimination by directing a subordinate who had called to ask why Zoia had reassigned some of Plaintiff's responsibilities to write her an e-mail as if they had not spoken and then responded by e-mail, again with no reference to their prior conversation, that she believed that Zoia was discriminating against her.  (Defs.' Ex. T; Tr. 803-08).  To be sure, the jury was not compelled to accept Defendants' argument that, in creating that e-mail record, Plaintiff was merely "paper[ing] the file" and trying to "buy employment insurance by throwing up the pregnancy card" (Tr. 982-84), but it was certainly entitled to do so.  Given that, the Court cannot say that a

reasonable juror would have been compelled to find that Plaintiff had engaged in protected activity within the meaning of the NYCHRL.[2]

In arguing otherwise, Plaintiff contends that Zoia himself admitted that Plaintiff had subjectively believed that she was being treated differently because of her pregnancy, pointing to his testimony that Plaintiff "felt she was being excluded from things" (Tr. 547) and that the e-mail in which she complained to him about discrimination represented "a continuation of the sort of strange lack of understanding of what was really happening" (Tr. 582; Pl.'s Reply 6-7). But *Zoia's* opinion about the sincerity of Plaintiff's belief that she was discriminated against is arguably irrelevant; the jury was entitled to draw its own conclusions about the good faith or lack thereof of Plaintiff's belief based on its own assessment of her credibility and the other evidence in the record, including the evidence discussed above. In any event, the premise of Plaintiff's argument is flawed. Viewed in context, Zoia's testimony cannot reasonably be construed (and certainly did not need to be viewed by the jury) as an admission about the sincerity of Plaintiff's belief in discrimination. Instead, according to Zoia, what Plaintiff failed to understand was "that [Glocap was] in the middle of this perilous crisis and she had to be flexible like everyone else." (Tr. 582). Similarly, while Zoia acknowledged that Plaintiff felt that she was being excluded, he testified that, if any exclusion occurred, it was because Plaintiff "just . . . wasn't there" when decisions were being made. (Tr. 547). Put simply, Zoia never linked Plaintiff's feelings to any

---

[2]     As Plaintiff notes (Mem. Law Supp. Pl.'s Renewed Mot. J. Matter Law Or Alternative, New Trial (Docket No. 134) ("Pl.'s Mem.") 16 n.2; Pl.'s Reply 2), in ruling on Defendants' Rule 50(a) motion at trial, the Court characterized Defendants' argument that Plaintiff's complaint did not qualify as "protected activity" under federal, state, and local law as "frivolous." (Tr. 869). In doing so, however, the Court was focused primarily, if not exclusively, on whether Plaintiff's e-mail to Zoia constituted a complaint about discrimination (it plainly did) and whether it was objectively reasonable (it was); upon reflection, the Court did not appreciate, or give sufficient credence to, Defendants' argument about the *subjective* good faith of Plaintiff's complaint.

perceived or actual discrimination.  To the contrary, he explicitly testified that, upon receiving

Plaintiff's alleged complaint of discrimination, he came to the conclusion that she was merely

"positioning" to "protect her job."  (Tr. 551-52).  In short, the jury was entitled to find that

Plaintiff did not have a subjective good faith belief that Defendants had engaged in

discrimination and therefore did not engage in "protected activity."  It follows that her Rule 50

motion with respect to her NYCHRL claim must be and is denied.

       Plaintiff's Rule 59 motion for a new trial is a closer call, if only because the Court found

some of Zoia's testimony lacking in credibility and there was evidence (that the Court credits)

tending to show that Zoia manufactured certain evidence for trial (namely, a self-serving reply to

Plaintiff's complaint that he allegedly drafted but never sent and a document concerning

maternity leave taken by another Glocap employee).  (Tr. 637-39; Pl.'s Ex. 292; Defs.' Ex. Z).

But when push comes to shove, the jury's determination of whether Plaintiff had a subjective

good faith belief that Defendants had engaged in pregnancy discrimination — a determination

that was required not only for Plaintiff's NYCHRL claim, but also for her Title VII and state-law

claim, *see, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14

(2d Cir. 2013) — turned entirely on its assessment of Plaintiff's credibility.  That is, if the jury

had credited Plaintiff's testimony that she believed at the time that Zoia was treating her

differently because she was pregnant, it could (and presumably would) have found that she had

engaged in protected activity.  But the jury was also "free to reject that evidence" (and

presumably did) and to conclude that Plaintiff did not actually believe that she was the victim of

discrimination — that she complained in a cynical attempt to protect her job or lay the

foundation for a lawsuit.  *ING Glob.*, 757 F.3d at 99.  "Given that this finding turned to a large

extent" — indeed, entirely — "on the credibility of the witnesses who testified before the jury,

the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing." *Id.*  It follows that — even if the Court might have reached a different judgment had it been the finder of fact — there is "no basis on which to conclude that the jury's verdict was egregious, seriously erroneous, or a miscarriage of justice." *Id.* (internal quotation marks omitted); *see also Raedle*, 670 F.3d at 418 (noting that "a judge . . . may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury" (internal quotation marks omitted)).  Accordingly, Plaintiff's Rule 59 motion must be and is denied too.[3]

For the reasons stated above, the Court is compelled — despite some misgivings about the jury's verdict — to deny Plaintiff's motion in its entirety.  The Clerk of Court is directed to terminate Docket No. 132.

SO ORDERED.

Date:   September 16, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[3]      In light of the Court's conclusion that there was an evidentiary basis for the jury to find that Plaintiff did not engage in protected activity under federal, state, and local law, it need not address Plaintiff's arguments with respect to the other elements of her retaliation claims.